# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GUY BOUDREAUX, JR.**                                                      **CIVIL ACTION**

**VERSUS**                                                                         **NO. 16-2384**

**ROBERT C. TANNER**                                               **SECTION: "B"(3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Guy Boudreaux, Jr., is a state prisoner incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. On November 11, 2010, he was convicted under Louisiana law of forty-seven counts of possession of pornography involving juveniles and four counts of attempted possession of pornography involving juveniles.[1] On January 31, 2011, he was sentenced on each of the possession charges to ten years imprisonment and on each of the attempted possession charges to five years imprisonment. It was ordered that those sentences be

---

[1] State Rec., Vol. 4 of 8, trial transcript, pp. 857-59; State Rec., Vol. 1 of 8, minute entry dated November 11, 2010; State Rec., Vol. 1 of 8, jury verdict form.

served concurrently and without benefit of probation, parole, or suspension of sentence.[2]   On November 9, 2011, the Louisiana First Circuit Court of Appeal affirmed the convictions and sentences.[3]   The Louisiana Supreme Court then denied his related writ application on August 22, 2012.[4]

On August 13, 2014, petitioner, through counsel, filed an application for post-conviction relief,[5] and that application was later supplemented.[6]   The state district court denied relief on May 29, 2015,[7] as did the Louisiana First Circuit Court of Appeal on August 21, 2015.[8]   On March 14, 2016, the Louisiana Supreme Court refused to consider petitioner's related writ application on the grounds that it was untimely filed,[9] and the court then likewise denied petitioner's request for reconsideration on May 2, 2016.[10]

In the interim, on March 11, 2016, petitioner filed the instant federal application seeking habeas corpus relief,[11] and he later supplemented that application.[12]   The state filed a response in opposition,[13] and petitioner filed a reply to that response.[14]

---

[2] State Rec., Vol. 4 of 8, transcript of January 31, 2011; State Rec., Vol. 1 of 8, minute entry dated January 31, 2011.
[3] State v. Boudreaux, No. 2011 KA 0833, 2011 WL 5394577 (La. App. 1st Cir. Nov. 9, 2011); State Rec., Vol. 5 of 8.
[4] State ex rel. Boudreaux v. State, 97 So.3d 352 (La. 2012); State Rec., Vol. 5 of 8.
[5] State Rec., Vol. 7 of 8.
[6] State Rec., Vol. 7 of 8.
[7] State Rec., Vol. 6 of 8, Order dated May 29, 2015.
[8] State v. Boudreaux, No. 2015 WL 1091 (La. App. 1st Cir. Aug. 21, 2015); State Rec., Vol. 6 of 8.
[9] State ex rel. Boudreaux v. State, 186 So.3d 645 (La. 2016); State Rec., Vol. 6 of 8.
[10] State ex rel. Boudreaux v. State, No. 2015-KH-2168 (La. May 2, 2016); State Rec., Vol. 6 of 8.
[11] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner has declared under penalty of perjury that his federal application was placed in the prison mailing system on March 11, 2016.  Rec. Doc. 1, p. 18.
[12] Rec. Docs. 9 and 11.
[13] Rec. Doc. 21.
[14] Rec. Doc. 22.

**Timeliness**

The state argues that petitioner's federal application is untimely.  For the following reasons, the state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).[15]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."  Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review.  See Foreman, 383 F.3d at 338-39.  As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal.  See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.  Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

---

[15] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

As noted, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions and sentences on November 9, 2011.  Accordingly, he had only until December 9, 2011, to file a Louisiana Supreme Court writ application seeking further direct review.  Because he did not even sign his Louisiana Supreme Court writ application until December 12, 2011,[16] it is evident that he could not have given that application to prison officials for mailing prior to that date.  Therefore, even utilizing the state mailbox rule,[17] the application was clearly untimely.[18]  As a result,

---

[16] See State Rec., Vol. 5 of 8, Louisiana Supreme Court writ application in case number 2011 KH 2805, Verification, p. 11.

[17] Under Louisiana's "mailbox rule," a prisoner's court filing is considered "filed" as of the moment he "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).

[18] It is true that the Louisiana Supreme Court's decision simply stated, "Denied."  However, the court's failure to explain the basis for its ruling does not mean that the court denied the application on the merits rather than because it was untimely.  Quite the contrary, when addressing the same situation in Butler, the United States Fifth Circuit Court of Appeals explained that the application was presumed to have been denied as untimely:

> The Louisiana Supreme Court's 1999 order contains only one word: "denied." See State v. Butler, 734 So.2d 1222. Butler argues that a simple "denied" cannot be based on untimeliness, relying in part on our statement in 2004 that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions." Grillette v. Warden, 372 F.3d 765, 775 (5th Cir. 2004).  In Grillette, though, we were evaluating solely the practice of the Louisiana Court of Appeal under a rule applicable only to it and not to the state's Supreme Court; we cited only intermediate court opinions for our conclusion. See id. at 769-70. Conversely, in a pre-Grillette opinion, we found that a single-word denial order from the Louisiana Supreme Court likely indicated untimeliness and not a merits decision. Williams v. Cain, 217 F.3d 303, 304, 309 n. 7 (5th Cir.2000).
>
> Butler also refers to numerous Louisiana Supreme Court orders which specifically stated that the application was "not considered, not timely filed." See, e.g., State v. Baker, 939 So.2d 1269 (La. 2006); State v. Shannon, 766 So.2d 1261 (La. 2000); State v. Jones, 763 So.2d 586 (La. 2000). However, those examples do not prove the negative, that the absence of such language when Butler's application was denied means that the merits were reached.
>
> Most persuasive to us, the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits.  A Louisiana Supreme Court rule requires that an "application seeking to review a judgment of the court of appeals," must be filed within thirty days; it specifies that "[n]o extension of time therefor will be granted." La. Sup. Ct. R. X, § 5(a).  While another section of the Rule -- Section 5(b) -- allows the Supreme Court to extend the time for filings under the subsection "upon proper showing," that applies to narrow categories of applications that do not include cases such as Butler's.
>
> Finally, there is no indication that the state court granted an extension or otherwise waived its own rule as to Butler.  Butler did not even request an extension of time to file his late direct review application.  He has not claimed that he received a letter from that court allowing a late filing such as did the defendant in Hill v. Cooper, 2007 WL 458207, No. 04-2588 (E.D. La. 2007).  We are not aware of any case in which the Louisiana Supreme Court sua sponte extended the amount of time in which to file under Rule X, § 5(a). Contra Hughes, 249 Fed. Appx. at 341 (Hughes

4

petitioner's state criminal judgment became final for AEDPA purposes on December 9, 2011, and his federal limitations period commenced on that date.[19]  That limitations period then expired one year later on December 10, 2012,[20] unless that period was extended through tolling.

The Court first considers statutory tolling.  Regarding the statute of limitations, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

However, petitioner had no such applications pending before the state courts during the applicable one-year period.  The only state application he filed during that period was his untimely direct-review writ application in Case No. 2011 KH 2805.  However, the United States Fifth Circuit Court of Appeals has expressly and conclusively held that a petitioner is not entitled to *any* tolling credit under § 2244(d)(2) for an untimely *direct-review* filing.  As the Fifth Circuit explained, "[u]nder that provision it is only state *post-conviction relief proceedings* that cause tolling."  Butler, 533 F.3d at 318 (emphasis added).  Because petitioner's untimely writ application

---

requested and received an extension under § 5(b)); McGee v. Cain, 104 Fed. Appx. 989 (5th Cir. 2004) (unpublished) (requested and did not receive an extension under § 5(a)); Hill, 2007 WL 458207 at *2 (requested and did receive an extension-unclear what basis).
 We conclude that the Louisiana Supreme Court found Butler's application for further review of his conviction to be untimely.

Butler, 533 F.3d at 318-19 (footnotes omitted).
[19] Out of an abundance of caution, the Court notes that petitioner's federal application would be untimely even if the Louisiana Supreme Court writ application had been timely filed.  As noted, the Louisiana Supreme Court denied relief on August 22, 2012.  Therefore, even if his conviction had not become final until ninety days after that date, i.e. until November 20, 2012, he did not file his first state post-conviction application until August 13, 2014, *over twenty months later*.  Accordingly, even under that scenario, he missed the one year federal filing deadline by more than eight months.
[20] Because the December 9, 2012, fell on a Sunday, petitioner's deadline was extended through the following Monday, December 10, 2012.  See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

was filed as part of the direct-review proceedings, § 2244(d)(2) is simply inapplicable. <u>Williams v. Cain</u>, Civ. Action No. 14-754, 2015 WL 4394132, at *3 n.13 (E.D. La. July 14, 2015); <u>Young v. Terrell</u>, Civ. Action No. 13-5691, 2014 WL 5040792, at *5 (E.D. La. Oct. 6, 2014); <u>Johnson v. Cain</u>, Civ. Action No. 12-974, 2013 WL 5961101, at *4 (E.D. La. Nov. 7, 2013); <u>Wilson v. LeBlanc</u>, Civ. Action No. 12-2577, 2013 WL 4648474, at *2 (E.D. La. Aug. 29, 2013); <u>Allen v. Tanner</u>, Civ. Action Nos. 11-927 and 11-1601, 2011 WL 4344586, at *2 (E.D. La. Aug. 19, 2011), <u>adopted</u>, 2011 WL 4345081 (E.D. La. Sept. 15, 2011). In light of that fact, and because petitioner filed no other applications in the state courts during that one year period, he is not entitled to statutory tolling.[21]

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." <u>Id</u>. at 649 (internal quotation marks omitted); <u>accord</u> <u>Davis v. Johnson</u>, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. <u>Alexander v. Cockrell</u>, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence

---

[21] The Court notes that petitioner filed a state post-conviction relief application on August 13, 2014, long after the federal limitations period had already expired. However, it is beyond cavil that applications filed after the expiration of the federal statute of limitations have no bearing on the timeliness of a federal application. <u>See</u> <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000); <u>Magee v. Cain</u>, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), <u>aff'd</u>, 253 F.3d 702 (5th Cir. 2001); <u>Williams v. Cain</u>, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period expires, "[t]here [i]s nothing to toll." <u>Butler</u>, 533 F.3d at 318.

demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court also notes that the United States Supreme Court has held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  Here, petitioner contends that his claims "form both the factual and actual existence of innocence."[22]  However, his argument falls far short of what McQuiggin requires.

In McQuiggin, the Supreme Court expressly cautioned:  "[T]enable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Further, as the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred."  Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013).

---

[22] Rec. Doc. 22, p. 2.

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence existing and known at the time of petitioner's trial.  That evidence is recounted in the Louisiana First Circuit Court of Appeal's summary of the facts of this case on direct appeal:

In April of 2006, Special Agent Calvin Williams of the United States Department of Homeland Security, Child Exploitation Unit, investigated a criminal organization that was operating child pornography websites throughout the world. The websites included "Home Collection 102," and "Hard Lovers 1012."  They sold only child pornography.  Several individuals, including an individual in St. Tammany Parish, were identified as having made purchases of child pornography, through a "Pay Pal" account, from the websites.  PayPal transaction logs identified purchases made on October 13, 2006, October 28, 2006, and November 30, 2006, by "Guy Boudreaux," of 14202 South Lakeshore Drive, Covington, IP address[FN 1] "68.222.5.5," and email address "financeguy_27@hotmail.com," using a credit card ending with "6451."

[FN 1]  Agent Williams indicated that an IP address is an address assigned to each computer.

On February 21, 2008, Agent Williams and other police officers went to the listed address and found the defendant at a computer in the living room.  After being advised of his Miranda[FN 2] rights, the defendant admitted he owned the computer and his email address was financeguy_27@hotmail.com.  He also confirmed that his credit card had been used to make the purchases at issue, but claimed he no longer had the card.  The defendant claimed he remembered two of the purchases. He also indicated he owned a damaged laptop in his closet.  According to Agent Williams, he asked the defendant if he had used the laptop to access child pornography, and the defendant answered affirmatively.  According to Agent Williams, the defendant also admitted making the purchases reflected in the PayPal transaction logs for "teen pornography."  Agent Williams indicated he told the defendant the images on the Home Collection website were of under-age "teens," and the defendant confirmed he had viewed the images.  According to Agent Williams, the defendant stated he viewed the pornography at least twice a week, or once every other week.  Agent Williams also stated that the defendant indicated he had used the desktop computer to make the purchases.

[FN 2]  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 LEd.2d 694 (1966).

Approximately two hours later, Agent Williams and St. Tammany Parish Sheriff's Office Detective Rachel Smith conducted a formal recorded interview with the defendant.  The defendant was again advised of his Miranda rights.  He

indicated he had lived at the address since 2004.  The police advised him they were investigating purchases made using his credit card.  The defendant stated he owned the computer in the living room and a damaged laptop in the bedroom.  He claimed any purchases in 2006 had to have been made on the laptop because the other computer was too new.  He indicated his email address was "financeguy_27@hotmail.com."  He conceded he had viewed pornography on the internet, but claimed it only involved adults and teens, which he defined as persons who were eighteen years old, nineteen years old, or in their early twenties.  The defendant claimed to remember only one of the three purchases being investigated. The police advised him that Hard Lovers and Home Collection were child pornography websites and the defendant indicated he did not remember accessing them every single day, but he had viewed pornography a couple of times a week. The police asked him whether he saw child pornography on the referenced websites, and the defendant replied he saw some pictures of teens younger than he was looking for.  The defendant indicated he had downloaded videos of teens "that were more developed."  The police asked him what they would find on his computer in regard to child pornography, and he replied, "Nothing that I know of."  A subsequent search of the defendant's computers revealed numerous items of child pornography.[23]

The foregoing "old" evidence was obviously compelling evidence of guilt, and so petitioner would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained:  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- *whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added).

Here, petitioner argues that the prosecutors engaged in misconduct; however, that argument is misplaced.  "'Actual innocence' … is defined as 'factual' as opposed to 'legal' innocence.

---

[23] State v. Boudreaux, No. 2011 KA 0833, 2011 WL 5394577, at *1-2 (La. App. 1st Cir. Nov. 9, 2011); State Rec., Vol. 5 of 8.

Actual innocence means that the person did not commit the crime, while legal innocence arises when a constitutional violation by itself would require reversal." Morris v. Dretke, 60 Fed. App'x 62, 70 (5th Cir. 2004) (citations omitted).  Here, petitioner presents no "new" evidence whatsoever showing that he is *factually* innocent of the crimes of which he stands convicted, much less any evidence of the type or caliber referenced in Schlup.  Therefore, he has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329; emphasis added).  Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than December 10, 2012, in order to be timely.  His federal application was not filed until March 11, 2016, and, therefore, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Guy Boudreaux, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this sixth day of October, 2016.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.